UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: WELLS FARGO WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION (NO. III) | § § § | MULTI-DISTRICT LITIGATION CASE NO. H-11-2266 |

**ORDER**

Pending before the court is a motion to reconsider filed by the lead plaintiffs in *Chan v. Wells Fargo Home Mortgage, Inc.* (the "*Chan* Plaintiffs"). Dkt. 241. The *Chan* Plaintiffs seek reconsideration of the court's order granting the unopposed motion for approval of a settlement on behalf of the Fair Labor Standards Act ("FLSA") collective action members filed by counsel for the *Richardson v. Wells Fargo* and *Chaplin v. Wachovia* matters ("MDL Lead Counsel"). Having considered the motion, responses, reply, and applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

This is a multi-district litigation case involving five cases in which the plaintiffs assert that the defendants failed to pay overtime compensation to plaintiffs who worked for the defendants as home mortgage consultants, mortgage consultants, loan originations, loan consultants, or similar positions. *See* Dkt. 81. Three of these five cases are relevant to the current motion: *Richardson et al. v. Wells Fargo Bank, N.A.*, No. 10-cv-4949, *Chaplin et al. v. Wachovia Mortgage Corp. et al.*, No. 11-cv-638, and *Chan v. Wells Fargo Home Mortgage, Inc.*, No. 11-cv-3275. The *Chan* case is a class action complaint for unpaid overtime wages and minimum wage and for failure to allow employee meal and break periods pursuant to Washington state law. Dkt. 214. The *Chaplin* and *Richardson* cases assert claims for violation of the FLSA on behalf of the named plaintiffs and those similarly situated throughout the nation. Dkts. 211, 212.

The court conditionally certified nationwide collective action classes of plaintiffs in *Chaplin* and *Richardson*. Dkt. 81. The court approved a notice of collective action, which was mailed to current and former mortgage loan officers employed by defendants Wells Fargo or Wachovia during the relevant time periods. Dkt. 233. Following the notice period, approximately 4,487 opt-in plaintiffs returned consent to join forms and became members of the FLSA collective action.[1] *Id.*

Following a two-day mediation, the parties agreed to settle the federal and state wage-and-hour claims of the plaintiffs who opted in to the *Richardson* and *Chaplin* classes (with the exception listed in footnote 1). *Id.* Under this settlement, each settling plaintiff will receive a proportionate share of the settlement fund according to a formula that takes into account the person's tenure and compensation. *Id.* The average gross per capita recovery for each settling plaintiff is $3,343. *Id.* In exchange for these funds, the defendants required a release. *Id.* The release includes " any claims derived from or based upon or related to or arising out of the same factual predicate of the *Richardson* Complaint and the *Chaplin* Complaint, whether known or unknown . . . ." Dkt. 233-1. It releases claims that "arise from the same factual predicate . . . whether under the [FLSA] or state wage and hour laws." *Id.*

MDL Lead Counsel filed an unopposed motion for approval of the settlement on March 25, 2014, and a corrected motion for approval on March 27, 2014.[2] Dkts. 232, 233. On March 31, 2014,

---

[1] A separate notice was sent to members of a class of plaintiffs in *Lofton et al. v. Wells Fargo Bank*, and 1,516 mortgage loan officers who were members of the *Lofton* class also elected to join this case. Dkt. 233. These opt-in plaintiffs are not relevant to the instant motion because the settlement to which the *Chan* Plaintiffs object does not include the opt-in plaintiffs who were also members of the *Lofton* class. *See id.*

[2] The motion was originally scheduled to be filed on January 31, 2014, and the hearing was to take place on March 7, 2014. Dkt. 231. The parties, however, agreed to a later date to submit the proposed settlement to the court, and the hearing was reset to a later date.

th *Chan* Plaintiffs filed objections to the proposed settlement. Dkt. 234. The *Chaplin* and *Richardson* plaintiffs and the defendants both filed responses to the objections on April 3, 2014. Dkts. 235, 236. The hearing to approve the settlement was held on April 4, 2014. Dkt. 238. MDL Lead Counsel, the defendants' counsel, and counsel for the *Chan* Plaintiffs appeared and presented arguments. The defendants and MDL Lead Counsel argued that the *Chan* Plaintiffs did not have standing to object to the settlement, as the named plaintiffs did not opt in to the FLSA collective action and no case had been certified in *Chan*. The court agreed that the *Chan* Plaintiffs lacked standing and otherwise agreed that the settlement was fair and reasonable. The court issued an order granting the motion to approve the settlement on April 4, 2014. Dkt. 239.

The *Chan* Plaintiffs now request that the court reconsider this order, arguing that they did not have sufficient time to fully develop their argument prior to the hearing, that they have standing due to a fiduciary duty to the putative class members, and that the class notice in this case violated due process because it did not apprise the Washington opt-in plaintiffs that they may be giving up their Washington state-law claims. Dkt. 241. The *Chan* Plaintiffs seek permission to interview Washington opt-in plaintiffs to determine if they had full knowledge and understood the consequences of what they would be releasing. *Id.* The *Chan* Plaintiffs also assert that the court erred in approving the settlement because it did not enter an order of final certification of the collective action and that it could not have issued a final certification order because the named plaintiffs are not similarly situated to the Washington opt-in plaintiffs. *Id.*

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration, but courts in the Fifth Circuit may treat motions for reconsideration as either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment. *Shepherd*

3

*v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). If the motion is filed within twenty-eight days of the entry of the order that the party wants reconsidered, the motion to reconsider is treated as a Rule 59(e) motion. Fed. R. Civ. P. 59(e) (allowing a party to alter or amend a judgment "no later than 28 days after the entry of judgment"); *Shepherd*, 372 F.3d at 328 n.1 (stating this rule but relying on the ten-day period in the former Rule 59(e) rather than twenty-eight day period adopted in 2009);. Otherwise, it is considered a Rule 60(b) motion. *Shepherd*, 372 at 328 n.1. Here, the motion was filed within twenty-eight days of the order.

A motion to reconsider pursuant to Rule 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1989)). Rather, Rule 59(e) allows parties "to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. An "unexcused failure to present evidence available at the time of . . . judgment provides a valid basis for denying a subsequent motion for reconsideration." *Id.* (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)).

### III. ANALYSIS

First, the court must determine whether it may reconsider the order approving the settlement under Rule 59(e). Defendants and MDL Lead Counsel urge that the *Chan* Plaintiffs have presented no manifest error of law or new evidence that could not have been presented at the time of the original objections. Dkts. 245, 246. The *Chan* Plaintiffs argue that the short timeframe between the filing of the proposed settlement and the hearing did not allow them to fully develop their arguments. Dkt. 241. The court finds the *Chan* Plaintiffs have provided a sufficient excuse for not fully

developing their arguments prior to the hearing. The court therefore turns to whether there was a manifest error of law in its approval of the settlement.

**A.     Standing**

During the hearing for the approval of the settlement, the court overruled the *Chan* Plaintiffs' objection to the settlement, primarily because the *Chan* Plaintiffs lacked standing to object. The *Chan* Plaintiffs assert that they had standing and the court's finding to the contrary is a manifest error of law. Dkt. 241. MDL Lead Counsel and the defendants argue that the *Chan* Plaintiffs do not have standing to object to the settlement because they are not parties to the settlement and, since no class has been certified in the *Chan* case, they do not represent any parties to the settlement. Dkts. 245, 246. The *Chan* Plaintiffs argue that they have standing to challenge the settlement in this case because, having asserted a claim for a Rule 23 class action, the *Chan* Plaintiffs have a fiduciary duty to all members of the putative class to raise matters bearing on the interests of putative class members even prior to class certification. Dkt. 241. The *Chan* Plaintiffs assert that the settlement is against the interests of the Washington opt-in plaintiffs, who are also members of the *Chan* putative class, because it releases wage-and-hour claims asserted under Washington state law in addition to the FLSA claim.

The *Chan* Plaintiffs cite the following cases in support of their argument that they have standing to challenge the settlement: *Roper v. Consure, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978); *Payne v. Travenol Labs., Inc.*, 673 F.2d 798, 814 (5th Cir. 1982); *Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 871 (7th Cir. 1978); *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1305 (4th Cir. 1978); *Boles v. Moss Codilis, L.L.P.*, No. 10-1003, 2011 WL 4345289, at *2 (W.D. Tex. Sept. 15, 2011); *Schnick v. Berg*, No. 03-5513, 2004 WL 856298, at *5 (S.D.N.Y. Apr. 20, 2004), *aff'd* 430 F.3d 112 (2d Cir. 2005); *Liles v. Am. Corrective Counseling Servs., Inc.*, 201 F.R.D. 452, 455 (S.D. Iowa 2001); *Berry*

*v. Pierce*, 98 F.R.D. 237, 242 (E.D. Tex. 1983); *Jaurigui v. Ariz. Bd. of Regents*, 82 F.R.D. 64, 65 (D. Ariz. 1979); *Rothman v. Gould*, 52 F.R.D. 494, 496 (S.D.N.Y. 1971); *Johnson v. U.S. Bank Nat'l Ass'n*, 276 F.R.D. 330, 332 (D. Minn. 2011); *White v. OSI Collection Servs., Inc.*, No. 01-1343, 2001 WL 1590518, at *6 n.9 (E.D.N.Y. Nov. 5, 2001); *Gardner v. Westinghouse Broad. Co.*, 559 F.2d 209, 219 (3d Cir. 1977) (Seitz, C.J., concurrence), *aff'd* 437 U.S. 478 (1978); and *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 403 (1980). All of these cases except *Payne* can be divided into two groups—cases relating to offers of judgment to the named plaintiffs prior to certification and cases that generally discuss the duties of the representative plaintiffs prior to certification of a class action. It is unclear why the *Chan* Plaintiffs cited *Payne*.

    The main case in the first category of cases is *Roper*. In *Roper*, the Fifth Circuit noted that "[b]y the very act of filing a class action, the class representatives assume responsibilities to members of the class." *Roper*, 578 F.2d at 1110. The concern in that case was that a dismissal prior to class certification that satisfied the claims of the named class members would prejudice putative class members. *Id.* The courts in *Susman*, *Shelton*, *Boles*, *Liles*, *Berry, Johnson*, and *White* faced similar concerns. *Susman*, 587 F.2d at 870–71 ("'The notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or, as here, against their will, deserves short shrift. Indeed, were it so easy to end class actions, few would survive.'" (quoting *Roper*, 578 F.2d at 1110)); *Shelton*, 582 F.2d at 1304–05 (holding that the named plaintiffs "may not abandon the fiduciary role they assumed at will . . . if prejudice to the members of the class they claimed to represent would result . . . ."); *Boles*, 2011 WL 4345289, at *2 ("It is therefore well settled that a case cannot be mooted by an offer of judgment to the named plaintiff while a timely-filed motion for class certification is pending."); *Liles*, 201 F.R.D. at 455 ("[D]efendant will not be permitted to force and end to the putative class action" by presenting a Rule 68 offer of judgment

6

to satisfy the named plaintiffs.); *Berry*, 98 F.R.D. at 243 ("Just as defendants should not be permitted to 'pick off' class actions immediately after denial of certification, they should not be permitted to subvert them immediately prior to certification, at least where putative class members manifest in timely fashion their desire to intervene."); *Johnson*, 276 F.R.D. at 332 (noting that the named plaintiff operates in a representative capacity from the moment the class action is commenced and striking a Rule 68 offer of judgment tendered before class certification was decided); *White*, 2001 WL 1590518, at *6 (finding that an offer of judgment did not moot the named plaintiff's claims because the "application of the mootness exception . . . [was] essential to prevent the race to the courthouse from entirely circumventing and stymieing the class action mechanism"). The general rule, announced in *Roper*, is that a defendant may not "short-circuit a class action by paying off the class representatives." *Roper*, 578 F.2d at 1110.

Importantly, in *Shelton*, the court noted that "[h]ad the appellees been other than the representative parties, there would be no objection to a voluntary settlement of their claim." *Shelton*, 582 F.2d at 1305. The court's main concern was the named plaintiffs using "the class action procedure for their personal aggrandizement." *Id.* In *Schick*, the court explained,

> [P]re-certification class counsel owe a fiduciary duty not to prejudice the interests that putative class members have in their class action litigation. These duties arise because class counsel acquires certain limited abilities to prejudice the substantive legal interests of putative class members even prior to class certification. In electing to put themselves forward as class counsel, they assume the duty of not harming those rights.

*Schick*, 2004 WL 856298, at *6–*7 (finding that "the action complained of was beyond the scope" of the fiduciary duty counsel owed to the putative class). Here, it is not the named plaintiffs who are settling, and these cases relating to defendants paying off the named plaintiffs so that the class action cannot proceed are simply not on point. There is no concern that the *Chan* Plaintiffs are taking

7

actions that prejudice the substantive rights of these individuals as the Washington opt-in plaintiffs elected to join the FLSA suit and designated the representative plaintiffs in *Richardson* and *Chaplin* as their agents. *See, e.g.*, Dkt. 230-1 (consent form). While the *Chan* Plaintiffs have a fiduciary duty to, essentially, do no harm to the substantive rights of the putative class members, they do not have an affirmative duty to protect the class members from the actions of the counsel and representative plaintiffs in another case that the putative plaintiffs voluntarily elected to join.

In the second category of cases cited by the *Chan* Plaintiffs, the courts more generally discuss the duties of class counsel and representative plaintiffs in the Rule 23 context. The *Jaurigui* court was considering whether the named plaintiff adequately represented the putative class and merely recited the rule that representative parties must act in the best interest of absent class members, examine the decisions of counsel, and play an active role in the litigation. *Jaurigui*, 82 F.R.D. at 65. The *Rothman* court was considering whether to allow a named plaintiff and his counsel to resign, and the court would not allow them to withdraw absent notice to the putative plaintiffs. *Rothman*, 52 F.R.D. at 496. In *Geraghty*, the U.S. Supreme Court considered whether the named plaintiff had a personal stake sufficient to appeal a class certification decision even though the named plaintiff's claim had expired. The Court stated that the rights afforded to the class representative are "analogous to the private attorney general concept." *Geraghty*, 445 U.S. at 403. The Court held that the named plaintiff may appeal the denial of the class certification ruling, but instructed that a "named plaintiff whose claim expires may not continue to press the appeal *on the merits* until a class has been properly certified." *Id.* at 404 (emphasis added).

These cases accentuate that a "class representative stands in a special relationship to members of the class, and there is nothing that would cast doubt on the representative's ability to protect the interests of the class." *Boles*, 2011 WL 4345289, at *2. However, a "client-lawyer relationship with

8

a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired." *In re Katrina Canal Breaches Consolidated Litig.*, No. 05-4182, 2008 WL 4401970, at *3 (E.D. La. Sept. 22, 2008) (discussing ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 07-445, at 3 (2007)); *see Altier v. Worley Catastrophe Response, LLC*, Nos. 11-241 & 11-242, 2012 WL 161824, at *11 (E.D. La. Jan. 18, 2012) (determining that the named plaintiffs in a state court class action did not represent the members of the putative class who had already elected to proceed with their FLSA claims in federal court and were represented by counsel in the FLSA case). Here, all of the individuals who will be bound by the settlement to which the *Chan* Plaintiffs object chose to be represented by lead counsel in the *Richardson* and *Chaplin* cases. The *Chan* class has not been certified. The relevant lawyer-client relationship is the relationship between MDL Lead Counsel and the opt-in plaintiffs. These plaintiffs are represented by counsel of their choice, and the *Chan* Plaintiffs have no standing to interfere with that relationship.

**B.      Fairness and Reasonableness of Settlement / Due Process**

Even if the *Chan* Plaintiffs had standing to object to the settlement, the court finds that the settlement is a fair and reasonable resolution of a bona fide dispute under the FLSA. The *Chan* Plaintiffs assert that the court used only boilerplate language in approving the settlement and did not provide sufficient detail to make meaningful review possible. Dkt. 248. While the standard cited is for a Rule 23 settlement rather than an FLSA settlement, and "Rule 23 actions are fundamentally different from collective actions under the FLSA**,"** the court nevertheless clarifies why it approved the settlement. First, no party with standing objected to the settlement. Second, the settlement is fair and reasonable because (1) the release appropriately applies only to wage and hour claims and is thus not overly broad; (2) the settlement provides a reasonable recovery for all opt-in plaintiffs;

9

(3) the service awards are reasonable considering the level of involvement of the named plaintiffs and the amount of service awards provided in similar litigation; (4) the attorneys' fees awarded are reasonable given the vast level of experience of the attorneys in this case; and (5) the settlement was reached after consultation with the named plaintiffs, who considered the claims of other plaintiffs when agreeing to the settlement. *Genesis Healthcare Corp. v. Symczyk*, __ U.S. __, 133 S. Ct. 1523, 1529 (2013) (acknowledging the differences between Rule 23 class actions and FLSA collective actions and holding that with a collective action "the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied"); *see In re Stern Overtime Litig.*, No. 07cv118 BTM, 2009 WL 3272872, at *4 (S.D. Cal. Oct. 9, 2009) (approving a service award of $15,000 per class representative); *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving a service award of $16,655 for the named plaintiffs); Dkt. 233 (brief in support of motion for approval of settlement) (setting forth all the reasons why the settlement is fair and reasonable); Dkt. 233 attachs. (affidavits of attorneys providing evidence of reasonableness of fees); Dkt. 235 attachs. (affidavits of representative plaintiffs discussing their level of participation in the case and the factors they considered in agreeing to the settlement). While certainly the opt-in plaintiffs are giving up claims for alleged violations of state wage-and-hour laws in addition to strictly settling the FLSA claims, compromise is part of a settlement, and all opt-in plaintiffs are receiving the benefit of a sum certain now as opposed to a potential recovery at some later unknown date.

The *Chan* Plaintiffs complain that the class notice did not mention that state-law claims were potentially at stake and could be released and that this failure to notify the opt-in plaintiffs that they

may lose the ability to pursue these claims is a violation of due process.[3] Dkt. 248. However, the opt-in plaintiffs knew from the notice form that this case pertained to alleged "unpaid overtime compensation." Dkt. 198-1. The notice form also states that the opt-in plaintiffs "will be designating representative plaintiffs to act on [their] behalf and to represent [their] interests." *Id.* The notice additionally states that the plaintiffs sought to "recover unpaid compensation and other damages." *Id.* The court finds that this notice, while not specifically mentioning state law wage-and-hour claims, encompasses claims relating to not being paid for all hours worked. This would include the claim that the plaintiffs did not get their state-mandated breaks and meal periods that is asserted in the *Chan* case. *See* Dkt. 214 (*Chan* supplemental complaint). This claim specifically states that the plaintiffs and class members "were not permitted to take meal and rest break periods during their shifts . . . [and] were not paid for the time they worked when they were supposed to be taking meal/break periods during the relevant time periods." *Id.*

Certainly MDL Lead Counsel and the representative plaintiffs made a decision on behalf of the opt-in plaintiffs with which the *Chan* Plaintiffs do not agree. However, unlike the *Chan* Plaintiffs, the opt-in plaintiffs specifically designated the representative plaintiffs to make these types of decisions for them when they signed the consent form, which states: "I designate and authorize the representative plaintiffs as my agents to make decision on my behalf concerning the case, the method and manner of conducting the case, entering into a contingency fee agreement concerning attorneys' fees and case expenses, entering into a settlement agreement, and all other matters pertaining to this litigation." *See, e.g.*, Dkt. 230-1. These opt-in plaintiffs chose counsel to represent

---

[3] While the time to object to the notice passed long ago, the *Chan* Plaintiffs assert that this objection has just become ripe as they had no indication that a settlement releasing claims broader than those contained in the notice would be reached until now. Dkt. 248.

their interests, and the court, after reviewing the settlement, believes counsel and the representative plaintiffs appropriately considered the interests of all opt-in plaintiffs when agreeing to the settlement on their behalf.

### C.     Need for "Final" Certification Ruling

The *Chan* Plaintiffs also argue that it was a manifest error of law for the court to approve the settlement without first making a "final" class certification ruling. Dkt. 241. The court conditionally certified the class on August 10, 2012. Dkt. 81. While there is a second stage in FLSA collective action cases during which the court may *decertify* the class if the plaintiffs are not similarly situated in light of information gathered during post-certification discovery, there was no need to reach the decertification stage here since the parties settled the case.[4] The *Chan* Plaintiffs cite cases from district courts outside of the Fifth Circuit indicating that a "final" certification is required prior to approving an FLSA collective action settlement. *See* Dkt. 241. However, courts in the Fifth Circuit have never imposed such a requirement and the court is not persuaded that it is necessary or appropriate.

---

[4]  The *Chan* Plaintiffs express a concern that the Washington opt-in plaintiffs are not similarly situated to the named plaintiffs in the *Chaplin* and *Richardson* cases because there are not state meal and rest break claims in *Chaplin* and *Richardson*. Dkt. 241. However, one of the named plaintiffs in *Richardson* asserted that he had meal and rest break issues similar to those asserted in the *Chan* case. Dkt. 235, Ex. 2. Moreover, MDL Lead Counsel notes that they started asserting state-law claims shortly before settlement was reached and were "ready to bring all necessary claims on behalf of all opt-ins, if a settlement had not been reached." Dkt. 245.

## IV. Conclusion

The *Chan* Plaintiffs' motion to reconsider (Dkt. 241) is DENIED. The court ORDERS the clerk to provide the MDL Panel with a copy of this order forthwith.

Signed at Houston, Texas on May 12, 2014.

---

Gray H. Miller
United States District Judge